Nos. 19-2106 & 19-2380

IN THE
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————————

UNITED STATES OF AMERICA

v.

TOYE TUTIS,

Appellant

Appeal from the Final Judgment in a Criminal Case of the United States District Court for the District of New Jersey (Crim. No. 14-699).  Sat Below: Honorable Jerome B. Simandle, U.S.D.J.

———————————————————————————

BRIEF FOR APPELLEE

———————————————————————————

CRAIG CARPENITO
UNITED STATES ATTORNEY
Attorney for Appellee
970 Broad Street
Newark, New Jersey 07102-2535
(973) 645-2700

On the Brief:
Sabrina G. Comizzoli
Assistant U.S. Attorney
(973) 645-2878

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ............................................................... iv

TABLE OF ABBREVIATIONS ......................................................... viii

STATEMENT OF RELATED CASES AND PROCEEDINGS ..................................... 1

STATEMENT OF THE ISSUES ......................................................... 2

STATEMENT OF THE FACTS AND THE CASE................................................. 3

SUMMARY OF ARGUMENT ........................................................ 13

ARGUMENT ...................................................................... 16

I.   JUDGE SIMANDLE CORRECTLY FOUND THAT THE SEPTEMBER 14, 2014
     WIRETAP AFFIDAVIT ESTABLISHED  A SUBSTANTIAL BASIS TO FIND
     PROBABLE CAUSE ........................................................... 16

     A.   Legal Standard ……………………………………………………..17

     B.   Judge Simandle Correctly Determined That Detective Dorn's
          Affidavit Contained Specific Facts Establishing A Substantial
          Basis For Probable Cause, Including That Tutis Changed His
          Phone Three Times To Thwart Law Enforcement………………19

II.  JUDGE SIMANDLE CORRECTLY DETERMINED THAT ANY INCORRECT
     STATEMENTS OR OMISSIONS FROM THE WIRETAP AFFIDAVIT WERE
     NOT MADE KNOWINGLY, INTENTIONALLY, OR WITH RECKLESS
     DISREGARD FOR THE TRUTH............................................... 24

     A.   LEGAL STANDARD ................................................... 24

     B.   JUDGE SIMANDLE FOUND DETECTIVE DORN'S TESTIMONY
          CLEAR, INTERNALLY CONSISTENT, AND CREDIBLE IN ALL
          MATERIAL RESPECTS .............................................. 25

C.  THE VIDEO OF THE SEPTEMBER 9, 2014 CONTROLLED DRUG PURCHASE AT A GROCERY STORE DID NOT SUPPORT TUTIS' CLAIM THAT HE WAS NOT THERE ............................................. 26

D.  DETECTIVE DORN DID NOT KNOWINGLY, INTENTIONALLY, OR RECKLESSLY IDENTIFY TOYE TUTIS, RATHER THAN JEWELL, AS "SANTANA" ......................................................... 28

E.  JUDGE SIMANDLE PERMISSIBLY CREDITED DETECTIVE DORN'S AFFIDAVIT, NOTWITHSTANDING AN INCONSISTENCY IN A REPORT HE SUBSEQUENTLY AUTHORED .................................. 29

F.  DETECTIVE DORN'S PURPORTED "FAILURE" TO MENTION THAT THE FEDERAL INVESTIGATION INTO TUTIS HAD BEEN FRUITLESS WAS NOT A MATERIAL OMISSION ........................... 30

G.  DETECTIVE DORN'S EXPERIENCE WORKING WITH THE CI WAS A SUFFICIENT BASIS FOR HIM TO BELIEVE THE CI WAS RELIABLE ...................................................................... 32

H.  PROBABLE CAUSE EXISTED FOR THE WIRETAP ORDER, EVEN WITHOUT THE AFFIDAVIT PARAGRAPHS TO WHICH TUTIS OBJECTS ................................................................... 33

III.  JUDGE SIMANDLE CORRECTLY CONCLUDED THAT THE USE OF A CELL-SITE SIMULATOR TO GATHER EVIDENCE UNDER THE OCTOBER 14, 2014 CDW DID NOT UNDERCUT JUDGE DELURY'S PROBABLE CAUSE DETERMINATION, WHERE THE AFFIDAVIT CLEARLY DESCRIBED THE TECHNOLOGY TO BE USED ........................ 36

IV.  JUDGE SIMANDLE DID NOT ERR AND PROPERLY EXERCISED HIS DISCRETION BY DENYING BOTH OF TUTIS' MOTIONS TO WITHDRAW HIS GUILTY PLEA ........................................... 40

A.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING TUTIS' FIRST MOTION TO WITHDRAW HIS GUILTY PLEA ............................................................................... 41

1.  LEGAL STANDARD .......................................... 41

2.  JUDGE SIMANDLE CORRECTLY FOUND THAT TUTIS PROFFERED NO FACTS  CASTING DOUBT ON HIS GUILT ... 42

3.    THE DISTRICT COURT FOUND THAT TUTIS DID NOT PROFFER A SUBSTANTIAL REASON FOR WITHDRAWING FROM THE PLEA AGREEMENT. ........................................ 44

a. THE PLEAS WERE NOT PACKAGED ................................ 44

b. BECAUSE THE PLEAS WERE NOT PACKAGED, NO *HODGE* COLLOQUY WAS NECESSARY, AND THE PLEA HEARING HAD ALL THE INDICIA OF A KNOWING AND VOLUNTARY PLEA ......................................................... 47

c. JUDGE SIMANDLE PROPERLY FOUND AS A FACT THAT, REGARDLESS OF TUTIS' BELIEF ABOUT THE PACKAGING OF THE PLEA AGREEMENT, HIS GUILTY PLEA WAS KNOWING AND VOLUNTARY. .......................................... 51

4.    CONCLUSION .................................................. 53

B.    TUTIS' SECOND MOTION TO WITHDRAW HIS GUILTY PLEA ....... 53

1.    LEGAL STANDARD ......................................... 54

2.    Farrell's Representation Was Not Ineffective ................55

3.    Tutis Cannot Show Prejudice ...................................56

CONCLUSION ......................................................... 57

# TABLE OF AUTHORITIES

## CASES                                                                PAGE(S)

*Dalia v. United States,*
  441 U.S. 238 (1979) ........................................................................17, 38

*Dardovitch v. Haltzman,*
  190 F.3d 125 (3d Cir. 1999) ..............................................................26, 51

*Franks v. Delaware,*
  438 U.S. 154 (1978) ..........................................................................*passim*

*Hill v. Lockhart,*
  474 U.S. 52 (1985) ............................................................................54, 56

*Illinois v. Gates,*
  462 U.S. 213 (1983) ..........................................................................17, 34

*McMann v. Richardson,*
  397 U.S. 759 (1970) ..........................................................................54, 56

*Ramsay v. Nat'l Bd. of Med. Examiners,*
  __ F.3d __, 2020 WL 4431789 (3d Cir. July 31, 2020) .............................. 27

*Sherwood v. Mulvihill,*
  113 F.3d 396 (3d Cir. 1997)................................................................. 25

*State v. Feliciano,*
  224 N.J. 351 (2016) ..........................................................................18, 22

*Strickland v. Washington,*
  466 U.S. 668 (1984) ................................................................... 16, 54, 56

*Tollett v. Henderson,*
  411 U.S. 258 (1973) .......................................................................... 54

*United States v. Artis,*
  919 F.3d 1123 (9th Cir. 2019)............................................................. 32

*United States v. Bond,*
  581 F.3d 128 (3d Cir. 2009)...............................................................17, 34

*United States v. Brooks,*
  427 F.3d 1246 (10th Cir. 2005) ................................................................ 38

*United States v. Brown,*
  250 F.3d 811 (3d Cir. 2001) ...................................................................... 54

*United States v. Brown,*
  631 F.3d 638 (3d Cir. 2011) .............................................................. *passim*

*United States v. Cooper,*
  750 F. App'x 103 (3d Cir. Sept. 13, 2018) ................................................. 1

*United States v. Cormier,*
  220 F.3d 1103 (9th Cir. 2000) ................................................................. 22

*United States v. Cross,*
  308 F.3d 308 (3d Cir. 2002) ............................................................... 40, 55

*United States v. Erwin,*
  765 F.3d 219 (3d Cir. 2014) ...................................................................... 2

*United States v. Grubbs,*
  547 U.S. 90 (2006) .............................................................................. 18, 39

*United States v. Hawkins,*
  788 F.2d 200 (4th Cir. 1986) ................................................................... 35

*United States v. Hodge,*
  246 F.3d 301 (3d Cir. 2001) .................................................................... 19

*United States v. Hodge,*
  412 F.3d 479 (3d Cir. 2005) .............................................................. *passim*

*United States v. Huff,*
  873 F.2d 709 (3d Cir. 1989) ........................................................ 40, 41, 42

*United States v. Jones,*
  994 F.2d 1051 (3d Cir. 1993) ............................................................. 18, 19

*United States v. Kaplan,*
  526 F. App'x 208 (3d Cir. May 24, 2013) ................................................ 21

*United States v. Kole*,
    164 F.3d 164 (3d Cir. 1998) ................................................................. 26

United States v. Murray,
    821 F.3d 386 (3d Cir. 2016) ............................................................. 16, 23

*United States v. Noriega*,
    676 F.3d 1252 (11th Cir. 2012) ............................................................. 22

*United States v. Rigmaiden*,
    2013 WL 1932800 (D. AZ. May 8, 2013) ............................................... 38

*United States v. Sanchez-Jara*,
    889 F.3d 418 (7th Cir. 2018) ............................................................. 37, 39

*United States v. Siddons*,
    660 F.3d 699 (3d Cir. 2011) ............................................................. 41, 42

*United States v. Tehfe*,
    722 F.2d 1114 (3d Cir. 1983) ............................................................ 17, 19

*United States v. Tiller*,
    763 F. App'x 209 (3d Cir. Feb. 20, 2019) ............................................... 1

*United States v. Tutis*,
    167 F.Supp.3d 683 (D. N.J. Mar. 8, 2016) ............................................. 3, 4

*United States v. Whitner*,
    219 F.3d 289 (3d Cir. 2000) ................................................................. 20

*United States v. Yusuf*,
    461 F.3d 374 (3d Cir. 2006) ................................................................. 25

## STATUTES

18 U.S.C. § 2518(3) .............................................................................. 18

18 U.S.C. § 2518(11)(b) ......................................................................... 18

18 U.S.C. § 2518(11)(b)(ii) ..................................................................... 18

21 U.S.C. § 851 .................................................................................... 51

N.J.S.A. 2A:156A–9(g)(2) ...................................................................... 18

N.J.S.A. § 2A:156A-9(g)(2)(b) ........................................................ 18

N.J.S.A. § 2A:156A-10 .................................................................. 18

## **RULES**

Fed. R. Crim. P. 11(d)(2)(B) ........................................................ 53

Fed. R. Crim. P. 11 ...................................................................... 47

Fed. R. Crim. P. 32(d) .................................................................. 41

## TABLE OF ABBREVIATIONS

"Appx"          refers to Defendant's Appendix.

"DB"            refers to Defendant's Brief.

"PSR"           refers to the Pre-Sentence Report filed under seal with this Court.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

Defendant Toye Tutis was the leader of a large drug trafficking organization. Six of his eleven co-defendants have pleaded guilty, been sentenced, and have not appealed: Kareem Taylor; Francisco Alberto Rascon-Muracami; Phillip Horton; Talib Tiller; and John Wellman. D.N.J. Dkt. #14-cr-699. Tutis' wife, Jazmin Vega, also pleaded guilty, was sentenced to 78 months of imprisonment, and has not appealed. D.N.J. Dkt. #14-cr-699-11. PSR ¶¶20, 22-23, 25, 28-29.

Four other co-defendants pleaded guilty, were sentenced, and appealed: Tozine Tiller (App. Dkt. #18-1050), *United States v. Tiller*, 763 F. App'x 209 (3d Cir. Feb. 20, 2019); Kabaka Atiba (App. Dkt. #17-3328) (summarily dismissing appeal based on appellate waiver); Ronald Douglas Byrd (App. Dkt. #17-2548) (defendant withdrew notice of appeal); and Tejohn Cooper: (1) (App. Dkt. #17-3013), *United States v. Cooper*, 750 F. App'x 103 (3d Cir. Sept. 13, 2018); and (2) (App. Dkt. #20-1403) (currently stayed pending resolution of motions filed in the district court). PSR ¶¶24, 26-27, 30.

Co-defendant Ivan Cuellar Naranjo (N.J. Dkt. #14-cr-699-03) is a fugitive. PSR ¶21. Toye Tutis' brother, Jewell Tutis, was convicted in Superior Court, Atlantic County, and his appeal was denied. PSR ¶33 n.1; *State of New Jersey v. Jewell E. Tutis*, Dkt. 14-00092 (DeLury, J.).

The United States filed a protective notice of cross-appeal (Appx200; App. Dkt. #19-2380) in case Tutis' opening brief breached his plea agreement by raising issues that he either did not reserve or expressly waived. *See United States v. Erwin*, 765 F.3d 219 (3d Cir. 2014). Tutis' opening brief, filed by his counsel, Stanley O. King, Esq., does not raise any issues that breach the plea agreement. DB6. Nevertheless, because Tutis has indicated his intention to file a *pro se* brief in this Court, and that brief may raise issues on appeal which Tutis did not reserve or expressly waived, the United States may yet choose to pursue its cross-appeal. *See* App. Dkt. #19-2106, ECF No. 89. The United States is not aware of any other related cases or proceedings.

## STATEMENT OF THE ISSUES

1.    Whether the District Court properly denied Tutis' motion to suppress evidence gathered under a state court-authorized roving wiretap after determining that the affidavit provided a substantial basis for probable cause.

2.    Whether the District Court correctly determined, after holding a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), that any incorrect statements in the wiretap affidavit were not made knowingly, intentionally, or with reckless disregard for the truth.

3.    Whether the District Court properly denied Tutis' motion to suppress evidence gathered by a court-approved cell-site simulator, where the

warrant accurately described the technology and equipment for gathering the evidence.

4.    Whether the District Court properly exercised its discretion in denying Tutis' motions to withdraw his guilty plea after finding it was knowing and voluntary and not caused by ineffective assistance of plea counsel.

## STATEMENT OF THE FACTS AND THE CASE

The Honorable Jerome B. Simandle admirably summarized the background of this case in *United States v. Tutis*, 167 F.Supp.3d 683 (D. N.J. Mar. 8, 2016). Toye Tutis led a large drug trafficking and money laundering organization that distributed kilogram quantities of heroin and cocaine in the Atlantic City, New Jersey area. *Id.* at 687. The Mexican Sinaloa cartel, through its broker Ivan Cuellar Naranjo and contacts in Los Angeles, supplied Tutis with narcotics. *Id.* Tutis then relied upon his network of drug traffickers in southern New Jersey, including his brother Jewell Tutis ("Jewell"), Tiller, and Atiba, to distribute the drugs. *Id.*

Tutis' wife, Jazmin Vega, assisted him by laundering drug proceeds through cash bank deposits, high-end purchases, and by co-mingling drug proceeds with the proceeds of legitimate businesses they owned. *Tutis*, 167 F.Supp.3d at 687. He and Vega shipped cash to Los Angeles to purchase

drugs, Appx105, 750, and structured cash transactions at banks to avoid triggering cash reporting requirements, Appx752.

A combined federal, state, and local law enforcement investigation employed numerous investigative techniques, including controlled buys, package intercepts, trash pulls, warranted property searches and seizures and court-authorized roving wiretaps of telephones used by Tutis and others. *Tutis*, 167 F.Supp.3d at 687. Ultimately, on September 14, 2016, a federal grand jury charged Tutis and five others in a 27-count superseding indictment. PSR ¶11; Appx350-375. Tutis was charged with conspiracy to distribute cocaine, cocaine base, and heroin; three substantive counts of drug distribution; conspiracy to commit money laundering; five counts of using a telephone to distribute drugs; and two counts of unlawful possession of a firearm. PSR ¶¶12-13, 15-18. With the exception of Naranjo, the Mexican cartel broker, who remains a fugitive, all of Tutis' co-defendants pleaded guilty. PSR ¶¶20-30.

Tutis unsuccessfully moved pre-trial to suppress evidence gathered via some of the Government's investigative techniques. After losing those motions, he determinedly negotiated for a conditional plea that allowed him to challenge those rulings on appeal. At his guilty plea hearing, Tutis admitted that he conspired to distribute between 140 and 450 kilograms of cocaine and approximately 26 kilograms of heroin between February 2012 and December

2014. Appx104, 748-749. He admitted he possessed a firearm in connection with his drug dealing and that he was an organizer, leader, manager or supervisor of the criminal activity. Appx105, 709.

## I.    Tutis' Unsuccessful Pre-Trial Motions

### A.    Judge Simandle Denied Tutis' Challenge To A Court-Authorized Roving Wiretap After Finding The Issuing Judge Had A Substantial Basis For His Probable Cause Determination.

In 2014, the Atlantic County, New Jersey, Prosecutor's Office ("ACPO") secured a series of wiretaps authorized by Superior Court Judge Bernard E. DeLury ("Judge DeLury"), based on affidavits sworn to by ACPO Detective Jason E. Dorn ("Detective Dorn") on mobile telephones used by Tutis, Jewell, and Naranjo. Appx7. On September 19, 2014, the ACPO obtained its first "roving" wiretap authorization to intercept communications over Jewell's mobile telephone. A roving wiretap allows investigators to intercept communications on a target's newly discovered mobile telephone without obtaining new judicial authorization based on a judicial finding that the target switched telephones to thwart interception.

### 1.    The Initial Wiretap Of Jewell Tutis' Phone

To support the roving wiretap application for Jewell's phone, Detective Dorn' affidavit identified previous federal wiretaps targeting Tutis that identified Jewell as a participant in a drug-distribution organization. Appx7.

The affidavit also stated that Tutis told a confidential informant ("CI") in July 2014 that he could provide the CI with cocaine, marijuana, and heroin. The CI told Detective Dorn that Tutis had instructed the CI to refer to him as "Santana" and provided the CI with "code phrases" to use when contacting Jewell to purchase drugs. Appx215. The affidavit further explained that the CI later spoke with Jewell, who confirmed that he and Tutis could provide the CI with drugs and other "hardware." Appx216.

On August 5, 2014, the CI gave Detective Dorn a business card the CI claimed Tutis had given him the day before. The face of the business card contained contact information for Toye Tutis. On the back of the card, the CI wrote the name "Jewel" and the number [609] 626-4684, and the name "Santana" and the number [609] 431-2004. Appx215, 563.

In Detective Dorn's presence, the CI placed a recorded telephone call to the number for Santana and requested "a box of donuts," meaning an ounce of cocaine. *Id.* The voice on the other end of the line, which Detective Dorn recognized as Tutis', instructed the CI to "call [his] brother." The CI then called the number for "Jewel" on the business card and requested a "box of donuts." *Id.* The next day, the CI and Jewell met for the first of nine controlled drug purchases described by Detective Dorn in the affidavit. Appx217-233.

2.    <u>The September 26, 2014 Wiretap Of Toye Tutis' Phone</u>

After obtaining wiretap authorization and intercepting Jewell's communications for a few days, investigators determined that Tutis used a specific mobile telephone for his drug dealing. During the intercepted communications, Jewell and Tutis discussed obtaining fraudulent drivers' licenses, which Detective Dorn believed they used to retrieve packages of narcotics sent through the mail.

Detective Dorn submitted a new affidavit to Judge DeLury on September 26, 2014, which sought roving wiretap authorization to intercept Tutis' mobile telephones. Appx202-251. That affidavit built upon the facts from the wiretap affidavit for Jewell's mobile telephone. Detective Dorn stated that a federal judge had authorized a wiretap in November 2013 for which Tutis was an interceptee, but that probable cause for the present state wiretap arose only from state-based investigations. Appx6. Detective Dorn did not describe the fruits of the federal investigation, given the greater latitude afforded federal law enforcement in conducting wiretap investigations. Appx161. Judge DeLury authorized the wiretap. Appx251.

3.    <u>Tutis' Motion To Suppress Evidence Gathered By The September 26, 2014 Wiretap</u>

Tutis moved to suppress the evidence captured by the September 26, 2014 wiretap, claiming that the affidavit lacked probable cause and failed to

demonstrate (because it contained only conclusory allegations) that he changed

mobile telephone numbers to thwart a law enforcement investigation. Appx4,

171. By a thorough written opinion dated March 8, 2016, Appx2-35, Judge

Simandle denied the motion, finding that Judge DeLury had a substantial basis

to find that Detective Dorn's affidavit, viewed in its entirety, demonstrated a

"fair probability" of Tutis' involvement in criminal activity. Appx31. On May

23, 2019, Judge Simandle issued a second written opinion on this and other

pre-trial motions, amplifying and explaining his rulings pursuant to 3d Cir.

L.A.R. 3.1. Appx151-199.

> B.  Following A *Franks* Hearing, Judge Simandle Found That Any
> Incorrect Statements In The September 26, 2014 Affidavit Were
> Not Made Knowingly, Intentionally, Or With Reckless Disregard
> For The Truth.

Tutis also moved to suppress the evidence gathered pursuant to the

September 26, 2014 warrant on the ground that it had been obtained by way of

a materially false affidavit and sought a *Franks* hearing, which Judge Simandle

held on October 17, 2016.[1] Appx426-687. After hearing the testimony of both

Tutis and Detective Dorn, and considering substantial documentary, audio,

---

[1] Judge Simandle previously denied Tutis' motion for a *Franks* hearing because
Tutis had not made a sufficient showing that Detective Dorn acted knowingly,
intentionally, or recklessly in presenting an affidavit with false information.
*Tutis*, 2016 WL 885044 at *11 (D. N.J. Mar. 8, 2016); Appx24, 152. After
Tutis presented additional information disclosed by the Government, Judge
Simandle granted a hearing. Appx152, 176.

and video evidence, Judge Simandle denied Tutis' motion to suppress, finding

that any incorrect statement in the affidavit was not made knowingly,

intentionally or with reckless disregard for the truth. Further, Judge Simandle

found that none of the allegedly false statements at issue was necessary to the

finding of probable cause. Appx155-199.

C.   Judge Simandle Denied Tutis' Challenge To The ACPO's Use Of A Cell-Site Simulator To Collect Information Authorized By Judge DeLury's October 14, 2014 Communications Data Warrant.

Early in the investigation, investigators learned that Tutis was using

mobile telephones to further his criminal activities but they could not identify

all of those telephones. Appx53. On October 14, 2014, Detective Dorn applied

to Judge DeLury for a Communications Data Warrant ("CDW"). The warrant

affidavit explained that Tutis used multiple mobile telephones, "demonstrated

a willingness to change" his telephone numbers, and "continue[d] to change"

numbers "with the purpose to thwart interception by members of law

enforcement." Appx287. Detective Dorn sought a CDW to identify Tutis'

telephones that investigators had yet to discover.

Based on the October 14 affidavit, Judge DeLury authorized the CDW,

under which investigators used a cell-site simulator ("CSS") on October 16 and

November 5 and 10. A CSS acts as a dummy mobile telephone cell-site tower,

capturing electronic signals transmitted by telephones that are unique for each

telephone. On those dates, investigators conducted surveillance to establish that Tutis was present at a particular location and then used the CSS at that location to capture electronic signals transmitted by all mobile telephones in that area. After capturing that information at several locations where they knew Tutis to be, they were able to identify the common numbers to look for a specific number connected to Tutis. Appx53.

Tutis moved to suppress evidence gathered by the CDW on the ground that the affidavit did not use the term "cell-site simulator."  The affidavit described the technology as "wireless interrogation equipment" that was "capable of retrieving wireless instrument identification information." App288. Following a hearing, Judge Simandle denied the motion by opinion on October 21, 2016, Appx77-79, and further explained his reasons in a second written opinion on May 23, 2019, Appx151-199.

## II.   Tutis Engaged In Extensive Plea Negotiations, Extracting Favorable Provisions From The Government In The Final Agreement, But Subsequently Moved To Withdraw His Guilty Plea, Twice.

After the District Court denied his pre-trial motions and his jury had been selected, Tutis, then represented by attorney Michael Farrell, spent the week before the scheduled trial in extensive plea negotiations with the Government. A80. The final plea agreement permitted Tutis to "claw back"

certain of his properties from forfeiture by the Government and retain the right to challenge Judge Simandle's suppression rulings on appeal.

Under that agreement, Tutis pleaded guilty on November 1, 2016 to engaging in a drug trafficking conspiracy (Count One) and a money laundering conspiracy (Count Thirteen). PSR ¶19; Appx696-714. Tutis' wife, Vega, pleaded guilty on the same day to the money laundering conspiracy count only. PSR ¶29. Because the two were husband and wife, there was overlapping language in their plea agreements, but only as to their jointly owned property, which was subject to Government forfeiture.[2] Appx84, 699-704.

A.   <u>Tutis, Represented by New Counsel, Moved to Withdraw His Guilty Plea.</u>

When Tutis hired Farrell to represent him in this case, Farrell was under indictment in the U.S. District Court for the District of Maryland. Appx81. After a hearing, Judge Simandle found that Tutis knowingly and voluntarily waived his right to conflict-free counsel. *Id.* Two months after Tutis pleaded guilty, however, the Maryland jury convicted Farrell of money laundering, money laundering conspiracy, tampering with official proceedings, and witness tampering. *Id.* As a result, in February 2017, Judge Simandle

---

[2] The Second Superseding Indictment contained forfeiture allegations pertaining to Tutis and Vega's property, including cash, firearms, bank accounts, vehicles, and over thirty pieces of real estate alleged to be the proceeds of criminal activity.

disqualified Farrell from this case and appointed Stanley O. King, Esq., to represent Tutis. *Id.*

One month later, represented by King, Tutis moved to withdraw his guilty plea, claiming it was involuntary. Appx768. Tutis claimed he believed that his plea agreement was part of a "package deal," that is, tied to and conditioned upon the guilty plea of his wife. Although earlier drafts of the plea agreement were "tied," the final version adopted by the parties was not. Tutis claimed that the District Court failed to conduct the colloquy required by this Court under *United States v. Hodge*, 412 F.3d 479, 489-90 (3d Cir. 2005), for "tied plea agreements" to ensure that co-defendants are not forced, threatened, or coerced into accepting them. He asserted that he felt pressured to plead guilty in order to obtain a more favorable plea agreement for his wife.

Judge Simandle held a three-day hearing in June 2017, in which he heard the testimony of Farrell, Vega, and Vega's attorney Troy Archie, Esq. Appx86, 811-1326. Tutis chose not to testify. Judge Simandle denied Tutis' motion in a written opinion on November 13, 2018, finding that the pleas were not tied, and, therefore, no *Hodge* colloquy was required. He also found that "Tutis affirmed, in his signed plea agreement, his Application for Permission to Enter Plea of Guilty, and in his Rule 11 colloquy with the Court, that his

decision to accept the Government's plea bargain was voluntary, entered of his own free will, and not coerced." Appx85.

    B.    <u>Tutis Moved A Second Time To Withdraw His Guilty Plea On The Ground That Farrell Was Ineffective.</u>

Tutis moved to withdraw his guilty plea a second time on February 22, 2019, arguing that Farrell had provided ineffective assistance of counsel by not reading the final version of his plea agreement and not informing him that the final version of the agreement had been decoupled from Vega's. Appx1397. After hearing testimony from Tutis on April 4, 2019, and in consideration of the testimony the Court had previously heard from Farrell, Archie, and Vega, in June 2017, the Court denied Tutis' motion.

## III.   <u>Sentencing</u>

On May 1, 2019, Judge Simandle sentenced Tutis to 264 months of imprisonment on Count One and 100 months on Count Thirteen, to be served concurrently, and five years of supervised release. Appx328, 1528. Tutis filed a timely notice of appeal. Appx149.

SUMMARY OF ARGUMENT

Tutis challenges Judge Simandle's denial of three pre-trial suppression motions, all supported by Judge Simandle's characteristically scrupulous and thorough written opinions. Because Judge Simandle's factual findings were

fully supported by the evidence and his legal conclusions were correct, Tutis'
claims fail.

First, Tutis claims that Detective Dorn's September 26, 2014 affidavit for a
roving wiretap of Tutis' phone lacked probable cause because it contained only
conclusory averments that Tutis changed mobile telephones with the intent to
thwart law enforcement detection. Tutis is wrong. As Judge Simandle correctly
found, the affidavit set forth that: Tutis was a significant member of a narcotics
distribution operation; Tutis instructed the CI to use code words when
arranging narcotics transactions with Tutis' brother, Jewell; the CI arranged
for at least nine controlled buys with Jewell, at least one of which was attended
by Tutis himself; there were numerous telephone calls and texts between Tutis
and Jewell in which they discussed obtaining fake drivers' licenses likely to
facilitate receiving packages of contraband through the mail; Tutis used pre-
paid phone accounts and changed his prepaid wireless telephone number three
times; and Detective Dorn had reason to believe that Tutis changed his
number frequently to thwart law enforcement detection. As a result, there was
a substantial basis for Judge DeLury to find probable cause to issue the
September 26, 2014 roving wiretap warrant.

Second, after holding a three-day *Franks* hearing, Judge Simandle
correctly found that the September 2014 warrant affidavit did not contain

knowing or reckless misstatements or omissions. Judge Simandle found as a fact that any incorrect statements in the affidavit were inadvertent or excusable, and Tutis has not come close to establishing clear error. As an alternative and sufficient basis for denying the motion, Judge Simandle found that any allegedly false statement was not necessary to the finding of probable cause. Tutis has failed to establish that was legally erroneous.

Third, Judge Simandle correctly found that the affidavit in support of the October 14, 2014 CDW was supported by probable cause. Further, it was of no consequence that Detective Dorn did not use the words "cell-site simulator" in the affidavit when, in fact, the affidavit correctly described how the CSS worked, which was more informative than merely using Tutis' preferred nomenclature. Appx46-58.

Judge Simandle, following a three-day hearing, properly denied Tutis' attempts to withdraw his guilty plea. He correctly rejected Tutis' dubious contention that his plea was involuntary because he mistook it to be packaged with his wife's plea and the Court was required to conduct a *Hodge* colloquy based on his mistake. The pleas were not coupled, and Tutis' alleged mistake did not warrant a *Hodge* colloquy. Judge Simandle properly exercised his discretion and did not clearly err in finding that Tutis: (1) made no plausible assertion of his innocence; (2) did not present a strong reason justifying the

withdrawal of the plea; and (3) could not show that he would have gone to trial.

After Tutis sought a second time to withdraw his guilty plea, this time based on a claim that Farrell was ineffective for failing to advise Tutis that the plea agreements had been uncoupled, Judge Simandle conducted another hearing at which Tutis testified. He then correctly determined that Tutis had satisfied neither *Strickland*'s performance nor prejudice prongs and again refused to allow Tutis to withdraw his guilty plea. Appx132-147.

## ARGUMENT

### I.    JUDGE SIMANDLE CORRECTLY FOUND THAT THE SEPTEMBER 14, 2014 WIRETAP AFFIDAVIT ESTABLISHED A SUBSTANTIAL BASIS TO FIND PROBABLE CAUSE.

***Standard of Review:*** This Court reviews a denial of a motion to suppress for clear error as to the district court's factual determinations and exercises plenary review over its application of the law to those facts. *United States v. Murray*, 821 F.3d 386, 390-391 (3d Cir. 2016).

Tutis claims that Detective Dorn's September 26, 2014 affidavit, upon which Judge DeLury relied in authorizing the roving wiretap of Tutis' phones, lacked probable cause to show that Tutis changed his mobile telephone and contained only "barebones" and "conclusory" statements. DB12, 16. As Judge Simandle correctly found, the affidavit averred sufficient facts to show that Tutis repeatedly changed his mobile telephone number, had changed it at least three times, and did so to thwart law enforcement detection.

A.    <u>Legal Standard</u>

The Fourth Amendment principles that apply to property searches also govern probable cause determinations under both the State and Federal wiretap statutes. *See United States v. Tehfe*, 722 F.2d 1114, 1118 (3d Cir. 1983). A search warrant complies with the Fourth Amendment when it meets three criteria: (1) it is issued by a neutral and detached magistrate (which Tutis concedes occurred here); (2) it was based on a showing of probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense; and (3) it satisfies the Fourth Amendment's particularity requirement. *Dalia v. United States*, 441 U.S. 238, 255 (1979).

A finding of probable cause requires a "fair probability" of criminal activity based upon the totality of the circumstances. *United States v. Bond*, 581 F.3d 128, 139 (3d Cir. 2009). The warrant-issuing court must "make a practical, common-sense decision" concerning whether the circumstances set forth in the supporting affidavit, "including the veracity and basis of knowledge of the persons supplying the hearsay information," demonstrate "a fair probability" that the authorization will result in evidence of a crime. *Illinois v. Gates*, 462 U.S. 213, 238-239 (1983). As for particularity, the Fourth Amendment requires that two matters in the search warrant be particularly

described: the place to be searched and the persons or things to be seized. *United States v. Grubbs*, 547 U.S. 90, 97 (2006).

The New Jersey Wiretapping and Electronic Surveillance Control Act, N.J.S.A. § 2A:156A-10, which governed the wiretap at issue here, parallels the federal wiretap statute, 18 U.S.C. § 2518(3). New Jersey law, like federal law, contains a "roving wiretap" provision allowing law enforcement, under certain circumstances, to intercept communications on a newly discovered facility used by the target, without first returning to a judge. *State v. Feliciano*, 224 N.J. 351, 356 (2016); *see* 18 U.S.C. § 2518(11)(b); N.J.S.A. 2A:156A–9(g)(2). Under federal wiretap law, applicants for a roving wiretap must show "probable cause to believe that the person's actions could have the effect of thwarting interception from a specified facility." 18 U.S.C. § 2518(11)(b)(ii). Under New Jersey law, which has a "stricter standard" than federal law, the State must show that the target has a "purpose … to thwart interception by changing facilities." N.J.S.A. § 2A:156A-9(g)(2)(b); *Feliciano*, 224 N.J. at 370.

The court reviewing the issuance of the warrant need not determine whether probable cause actually existed, but only whether there was a "substantial basis for finding probable cause." *United States v. Jones*, 994 F.2d 1051, 1054 (3d Cir. 1993). Moreover, Judge Simandle had to afford great deference to Judge DeLury's probable cause finding and deny suppression so

long as the warrant affidavit provided a substantial basis for the initial probable

cause decision. *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001).

Although a reviewing court may not "rubber stamp" the authorizing judge's

conclusions, *Tehfe*, 722 F.2d at 1117, the "resolution of doubtful or marginal

cases" should be "largely determined by the preference to be accorded to

warrants," *Jones*, 994 F.2d at 1055.

>B.    Judge Simandle Correctly Determined That Detective Dorn's Affidavit Contained Specific Facts Establishing A Substantial Basis For Probable Cause, Including That Tutis Changed His Phone Three Times To Thwart Law Enforcement.

Contrary to Tutis' assertion that Detective Dorn's September 26, 2014

affidavit lacked probable cause and contained only "barebones" and

"conclusory" statements, DB12, 16, Judge Simandle found that Detective

Dorn's affidavit contained a "vast" evidentiary proffer, which provided Judge

DeLury with a "substantial basis for his probable cause determination."

Appx26-27. That evidentiary proffer included that:

> • Tutis was the subject of a twenty-year investigation for "high-level" narcotics distribution and was a "prominent significant member of a narcotics distribution operation," Appx211, 215;

> • Dorn was familiar with Tutis' voice and recognized it on the August 5, 2014 recording of the call with the CI, Appx216, 236;

> • During an in-person meeting between the CI and Tutis, Tutis instructed the CI to call him "Santana," use code words for drug type and quantity, and arrange for drug sales from Tutis' brother, Jewell; a drug sale between the CI and Jewell soon ensued, Appx215;

• Multiple controlled purchases of drugs occurred between the CI and Jewell, one of which occurred in Tutis' presence, Appx217-233; and

• Numerous texts and conversations occurred between Tutis and Jewell regarding obtaining fraudulent out-of-state drivers' licenses, which Detective Dorn believed were used to retrieve mailed packages of contraband, Appx236.

Significantly, with regard for the need for a "roving" wiretap to continue to gather evidence after the target switches cell phones, Detective Dorn's affidavit stated:

• Tutis used pre-paid accounts and changed his prepaid wireless telephone number three times, Appx211;

• Tutis told the CI that he changed his number often, including to the latest number that Detective Dorn had probable cause to believe Tutis was currently using in furtherance of his drug dealing activity, Appx211; and

• Dorn had reason to believe that Tutis changed his number frequently in order to thwart law enforcement detection, Appx204, 211, 275.

Judge DeLury could rely on Detective Dorn's conclusion that Tutis changed his number to avoid law enforcement detection because the "issuing judge or magistrate may give considerable weight to the conclusions of experienced law enforcement officers." *United States v. Whitner,* 219 F.3d 289, 296 (3d Cir. 2000) (citation omitted).

According to Judge Simandle, these proffered facts gave Judge DeLury:

a substantial basis to find probable cause that Tutis was in the habit of changing his cell phones often to avoid detection of his illegal activities. It is also a reasonable inference that one who is involved as a principal participant in drug dealing, who conducts drug business over the phones and who changes phones frequently is doing so for the purpose of avoiding detection. No one would announce that he is changing phones often to avoid detection of criminality and it would be illogical to erect such a requirement of proving this by direct evidence, rather than by reasonable inferences from reliable evidence as is the standard for showing probable cause.

Appx174.

Tutis relies on *United States v. Kaplan*, 526 F. App'x 208 (3d Cir. May 24, 2013) (NPO), which affirmed the denial of a suppression motion even though the affidavit there made out a weaker showing of probable cause than the affidavit here. DB10. Nevertheless, a panel of this Court found that the *Kaplan* affidavit was "a far cry from bare bones" where it described a CI's tip, relevant criminal history, real estate, and motor registry records, the officers' observation of drug transactions, and "other activity evocative of drug dealing." *Id.* at 212.

Here, in contrast, Detective Dorn pointed to direct evidence that Jewell had changed his telephone number at least four times. That supported, rather than undermined, the inference that Tutis engaged in the same evasive conduct. After all, the two were tightly joined coconspirators, with Tutis holding a greater role in the conspiracy. Jewel had every incentive to share any

detection avoiding techniques with Tutis. It takes no unreasonable leap of imagination to infer that if Jewell were changing telephone numbers to avoid detection, so was Tutis.

Tutis also claims that the affidavit did not support New Jersey's stricter standard for roving wiretaps, as interpreted by *Feliciano*, which requires the State to show the target has a "purpose … to thwart interception." 224 N.J. at 370. But Judge Simandle "was not required to suppress the evidence on the ground that the state rule had been violated because federal law, not state law, governs the admissibility of evidence in federal court, and complaints that the evidence was obtained in violation of state law are of no effect." *United States v. Noriega*, 676 F.3d 1252, 1263 n.4 (11th Cir. 2012) (internal quotation marks omitted); *see also United States v. Cormier*, 220 F.3d 1103, 1111 (9th Cir. 2000) ("even if state law was violated, Cormier's consent is judged solely under federal law").

Moreover, as Judge Simandle noted below, the New Jersey Supreme Court decided *Feliciano* in 2016, eighteen months after Judge DeLury considered the wiretap application here, and the *Feliciano* Court did not apply its holding retroactively. Appx173. In any event, even under the *Feliciano* standard, Detective Dorn's affidavit gave Judge DeLury a substantial basis to

find probable cause that Tutis changed phones often in order to avoid detection of his illegal activities. Appx174.

Finally, Tutis claims that Dorn's "Friday Reports" to Judge DeLury did not state that his ACPO supervisors recognized Tutis' voice and agreed that it was Tutis' voice on a new phone. DB17. Again, this alleged failure does not implicate federal law and so is no basis for suppression. Moreover, any failure of Detective Dorn to comply with this reporting protocol does not undermine Judge Simandle's finding of a substantial basis to find probable cause. The affidavit contained averments by Detective Dorn, whom Judge Simandle found highly credible, that Dorn recognized Tutis' voice and knew from the content of the conversations that Tutis was speaking. Appx237, 433-434.

Tutis has failed to show that Judge Simandle's fact-finding was clearly erroneous or that his legal conclusions were erroneous. *Murray*, 821 F.3d at 390-391. So this Court must affirm his conclusion that probable cause supported the roving wiretap.

## II. JUDGE SIMANDLE CORRECTLY DETERMINED THAT ANY INCORRECT STATEMENTS OR OMISSIONS FROM THE WIRETAP AFFIDAVIT WERE NOT MADE KNOWINGLY, INTENTIONALLY, OR WITH RECKLESS DISREGARD FOR THE TRUTH.

*Standard of Review:* Clear error. *United States v. Brown*, 631 F.3d 638, 642 (3d Cir. 2011).

Tutis claims that Detective Dorn's September 2014 affidavit contained five deliberate and reckless false statements or material omissions, which, if corrected, would defeat the showing of probable cause. DB21. After listening to Detective Dorn's sworn testimony on the subject, Judge Simandle found him to be highly credible. Judge Simandle analyzed each of Tutis' claims and found that any incorrect statements made by Detective Dorn were not made knowingly, intentionally, or with reckless disregard for the truth. Appx176. As an alternate and sufficient reason for denying suppression, Judge Simandle also found that the statements and omissions challenged by Tutis were not necessary to the finding of probable cause. Judge Simandle was correct on both counts.

### A. Legal Standard

Under *Franks*, a defendant is entitled to an evidentiary hearing if he makes a substantial showing that a warrant application (a) contains material misstatements or omissions, made knowingly or with reckless disregard for the truth, and (b) the correction of which would prevent the affidavit from

establishing probable cause. 438 U.S. at 171. At the hearing, the defendant

must prove both of those shortcomings by a preponderance of the

evidence. *Sherwood v. Mulvihill,* 113 F.3d 396, 399 (3d Cir. 1997) (citing

*Franks,* 438 U.S. at 171–172). When faced with an affirmative

misrepresentation, the court must excise the false statement from the affidavit.

When faced with a material omission, the court must add the omitted

information to the affidavit's averments. The defendant must then prove by a

preponderance of the evidence that probable cause does not exist under the

corrected affidavit. *United States v. Yusuf,* 461 F.3d 374, 383–84 (3d Cir. 2006).

A district court's resolution of the question whether a particular false statement

in a warrant affidavit was made with reckless disregard for the truth is subject

to reversal only upon a finding of clear error. *United States v. Brown,* 631 F.3d

638, 642 (3d Cir. 2011).

B.    <u>Judge Simandle Found Detective Dorn's Testimony Clear,
      Internally Consistent, And Credible In All Material Respects.</u>

Based on his "ample" opportunity to observe Detective Dorn's

demeanor and assess his credibility during the *Franks* hearing, Appx179, Judge

Simandle concluded that "Detective Dorn's testimony at the *Franks* hearing

was clear, internally consistent, and consistent with the documentary record….

[H]e was credible in all material respects," and his testimony was "worthy of

significant weight." Appx181. The credibility of a witness is quintessentially

the province of the trial court. *United States v. Kole,* 164 F.3d 164, 177 (3d Cir.

1998). This Court will only "reject a District Court's finding concerning a

witness's credibility in rare circumstances." *Dardovitch v. Haltzman*, 190 F.3d

125, 140 (3d Cir. 1999). That's because "issues involving assessments of

witness credibility ... are wrapped up in evaluations of demeanor that a trial

judge is in a better position to decide." *Brown*, 631 F.3d at 643. This Court

should thus defer to Judge Simandle's credibility determinations, infused as

they are by his meticulous treatment of the record and thorough explication of

the applicable legal principles.

C.   The Video Of The September 9, 2014 Controlled Drug Purchase
     At A Grocery Store Did Not Support Tutis' Claim That He Was
     Not There.

Tutis claimed that Detective Dorn should have informed Judge DeLury

that the video recording of the CI's drug purchase at the "Dave's by Ta' Ja"

grocery store, owned by Tutis, contradicted the CI's account of the purchase.

During the September 9, 2014 controlled buy at the store, the CI wore a

concealed body camera that recorded the encounter. According to Tutis, that

video contradicts the CI's account of what happened. Tutis claims that the

video establishes that he was not present during the controlled purchase, but,

rather, the CI saw Tutis' brother Joseph, and confused him for Tutis.

Appx578.

Judge Simandle viewed the video and found it "totally unclear," "difficult to discern," and "displayed upside down." Appx187, 545. In fact, it was so unclear that defense counsel initially believed that an individual's hat was actually a distinctive hairstyle. Appx187. Similarly, the audio quality was "compromised, being obscured by background conversations and music." Appx187. For a "significant portion" of the video, the "camera and microphone are up against a wall … negating any value in potential visual identification." Appx188. As a result, Judge Simandle found there was not "much value" in using the video to either corroborate or challenge the CI's version of events. Appx188.

Judge Simandle noted that Detective Dorn's affidavit clearly stated that he was relying on information provided by the CI and was not verifying the CI's claims. Appx188. Given that the video neither supports Tutis' claim that he was not present nor undermines the CI's claim that Tutis was, the District Court rejected Tutis' claim that Detective Dorn knowingly, intentionally, or recklessly misstated or omitted facts related to Tutis' presence during the drug purchase at the grocery store. Appx189. Tutis has failed to demonstrate that Judge Simandle's finding on this point was clearly erroneous, *i.e.*, "completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data." *Ramsay v.*

*Nat'l Bd. of Med. Examiners*, __ F.3d __, 2020 WL 4431789, at *8 (3d Cir. July 31, 2020) (internal quotation marks omitted).

### D. Detective Dorn Did Not Knowingly, Intentionally, Or Recklessly Identify Toye Tutis, Rather Than Jewell, As "Santana."

Tutis claimed that Detective Dorn knew or should have known that Jewell Tutis, not Toye Tutis, used the nickname "Santana," and that Dorn's assertion that Tutis used the name "Santana" was knowingly, intentionally, or recklessly stated incorrectly. During the *Franks* hearing, Detective Dorn testified that, when he authored the September 2014 affidavit, he believed that the names the CI wrote on the back of the business card, "Santana" and "Jewel," were two separate people with two different phone numbers. Appx430. Further, he believed it possible that the term "Santana" may have referred generically to the Tutis drug ring, while the name "Little Santana," referred to Jewell, and "Big Santana" referred to Toye Tutis. Appx184, 455-456, 484. In addition, when the CI called the number for "Santana," Detective Dorn believed that the person who answered the phone and responded to that name, sounded like Tutis. Dorn recognized Tutis' voice from having heard it once briefly in person, heard it over the phone when the CI called Tutis, and heard it on a video posted on YouTube. Appx433-434. He also recognized Jewell's voice. Appx438. However, later in the investigation, Detective Dorn

learned from the CI that Jewell stated he also went by the name "Santana." Appx453.

Because Detective Dorn, when authoring the affidavit, had seen some evidence that Jewell sometimes referred to himself as "Santana" or "Little Santana," Judge Simandle credited Dorn's testimony that he believed that the nickname primarily referred to Tutis, but that it may, at other times, have been used by Jewell or used as shorthand for the entire drug ring. Appx186. As a result, Judge Simandle found that Detective Dorn did not knowingly, intentionally, or recklessly misstate or omit facts related to the identify of Santana. Appx186. This finding was not clearly erroneous. *Brown*, 631 F.3d at 642.

> E.     Judge Simandle Permissibly Credited Detective Dorn's Affidavit, Notwithstanding An Inconsistency In A Report He Subsequently Authored.

Tutis claims suppression was required because of a minor inconsistency between Detective Dorn's affidavit and a subsequent report he wrote. Specifically, Detective Dorn's September 26, 2014 affidavit stated that, according to the CI, Tutis had given the CI the business card on which the CI wrote the phone numbers for "Santana" and "Jewel." However, approximately a year and a half later in February 2016, after interviewing the CI again, Detective Dorn wrote a report in which he stated that Jewell, and

not Tutis, had given the business card to the CI. Appx459-461. When

confronted with this inconsistency during the *Franks* hearing, Detective Dorn

testified that the February 2016 report was inaccurate on this point due to his

carelessness. Appx505. Judge Simandle credited Detective Dorn's testimony

noting that he "testified at length, and very credibly, that the errors were

made" in the February 2016 report. Appx185. Tutis' contention that the

discrepancy somehow "demonstrates [Dorn's] subjective awareness of the

source of the business card," DB27, hardly demonstrates that Judge Simandle

clearly erred in that credibility determination. *Brown*, 631 F.3d at 642.

> F.    Detective Dorn's Purported "Failure" To Mention That The Federal Investigation Into Tutis Had Been Fruitless Was Not A Material Omission.

Detective Dorn mentioned the existence of the federal investigation of

Tutis in his affidavit, but noted that he was not including information derived

from that investigation because some of it might have been derived from

techniques that were impermissible under New Jersey law. Appx209-210. Tutis

complains that Detective Dorn's affidavit did not state that a purported 18-

month federal investigation failed to lead to Tutis' prosecution. DB28.

According to Tutis, failing to inform Judge DeLury that a federal investigation

had not produced any incriminating evidence against Tutis constituted a

material omission.

Judge Simandle properly rejected this claim. First, Tutis' speculation that there was an 18-month federal investigation and that it resulted in no incriminating evidence against him is just that—pure speculation. There is no evidence in the record that a federal investigation into Tutis' activity had been ongoing for 18 months. Second, there was no evidence that an investigation had not uncovered any incriminating evidence. In fact, Detective Dorn testified at the *Franks* hearing that, when he submitted the affidavit, he had no knowledge of the investigation, other than that it had taken place. Appx517. But, more importantly, even if a federal investigation had been fruitless, there is no legal support for the proposition that the inability of a federal investigation to uncover incriminating evidence against a particular target impacts the legal standard for a state investigation into that same target to show probable cause for a search warrant, when the warrant application is based solely on information gathered in the state investigation.

For these reasons, Judge Simandle did not clearly err by concluding that Detective Dorn's purported "failure" to mention in his affidavit the purported "fruitlessness" of a federal investigation into Tutis was not a material omission. Appx181-182.

G.    <u>Detective Dorn's Experience Working With The CI Was A Sufficient Basis For Him To Believe The CI Was Reliable.</u>

Detective Dorn's affidavit described the CI as "reliable," but without explaining the basis for his belief. Appx242. At the *Franks* hearing, Detective Dorn explained that he typically does not include this type of information in his affidavits in an effort to protect the confidentiality of the informant. Appx512. Tutis claims that this conclusory statement fails to establish the CI's reliability and other facts undermined Detective Dorn's opinion on this point. DB31-32.

Detective Dorn believed that the CI was a reliable source, in part due to the CI's prior work as an informant and his production of verified intelligence in this particular investigation. In other words, the information the CI provided was proven to be correct. Appx192, 467. For example, the CI provided code words used by members of Tutis' drug ring pertaining to the quantity and type of drugs and successfully used those words to set up and participate in at least nine controlled purchases. *See, e.g., United States v. Artis*, 919 F.3d 1123, 1135 (9th Cir. 2019) (informant, on whose information affidavit was based, was reliable because informant's tip was corroborated by the fact that the suspect was using the targeted cell phone).

Moreover, had Judge DeLury asked Detective Dorn for the basis of his belief at the time Judge DeLury considered the warrant, Detective Dorn would

have opined further. Appx193. Judge Simandle found Detective Dorn's testimony "highly credible" and that "his prior experiences with the CI … both in relation to this investigation and prior ones, were sufficient for Detective Dorn to tell Judge DeLury that he found [the CI] to be a reliable source of information." Appx193.

None of Tutis' complaining demonstrates that this finding was clearly erroneous. Judge Simandle elsewhere disposed of Tutis' claims that the CI's assistance to federal authorities failed to establish Tutis' criminality, that the CI misidentified Tutis as "Santana," or that the CI incorrectly placed Tutis inside the grocery store where a drug deal occurred. DB31-32. Tutis touts that police surveillance never caught him personally selling drugs to the CI, but that was entirely consistent with the CI's narrative that Tutis, the supervisor of the organization and the person with the "connect" to the Mexican cartel, had his underlings do the dirty work of hand-to-hand delivery of drugs to customers.

H.   Probable Cause Existed For The Wiretap Order, Even Without The Affidavit Paragraphs To Which Tutis Objects.

Judge Simandle refused to excise several paragraphs from the affidavit as requested by Tutis: Appx214 ¶19 (Tutis instructed the CI to use code words and communicate with Jewell to purchase drugs); Appx 215 ¶21 (Tutis told the CI that his alias was "Santana"); Appx216 ¶23 (the description of the CI's two phone calls to the numbers on the business card); and Appx231 ¶44 (the

description of the controlled buy at the grocery store). Appx189. However, the District Court found that even if the statements in those paragraphs were knowingly, intentionally, or recklessly false and should be excised, the remainder of the affidavit still established probable cause for the issuance of the wiretap order. Appx189. This finding was legally correct.

Even without those paragraphs, the following factual assertions remaining in the affidavit provided a "fair probability" of criminal activity, based upon the totality of the circumstances. *Bond*, 581 F.3d at 139; *Gates*, 462 U.S. at 238.

> • Tutis led a large narcotics trafficking network that distributed many kilograms of cocaine, Appx211 ¶13, Appx215 ¶20;
>
> • He changed his phone number on three occasions in a deliberate effort to thwart detection by investigators, Appx211 ¶13;
>
> • Tutis' brother, Jewell, worked for him, and, together, they sold drugs and weapons, Appx216 ¶22;
>
> • During August 6–September 23, 2014, the CI frequently purchased drugs from Jewell, often using the coded language that Tutis directed, and often at the apartment complex where Tutis' company performed maintenance, Appx217-234 ¶¶24-52;
>
> • Jewell told the CI that he and Tutis obtained and sold fraudulent drivers' licenses, Appx228 ¶40, Appx234-235 ¶53;
>
> • There were many communications between Jewell's telephone and the target number of the application, believed to be Tutis' phone, regarding the trafficking of fraudulent drivers' licenses, Appx235 ¶54;

• Detective Dorn believed that the Tutis brothers were using fraudulent drivers' licenses to open post office boxes under false names to receive packages of narcotics, Appx235 ¶54; and

• Investigators identified the target number as belonging to Tutis after hearing his voice, the vocabulary he used, including references to his mother and the "mat," which was the laundromat owned by Tutis, Appx235 ¶54.

Based on these averments, the affidavit demonstrated a "fair probability" that the target phone number was being used in furtherance of drug trafficking. *See generally United States v. Hawkins*, 788 F.2d 200, 204 (4th Cir. 1986) (search warrant affidavit was sufficient, even without consideration of information from allegedly unlawful wiretaps, where the remaining information included incriminating informant accounts, surveillance of defendant walking a short distance from his residence to use a pay phone, suspicious pattern of calls from defendant's telephone, and unexplained income). Judge Simandle did not commit legal error by finding there was probable cause for the issuance of the September 26, 2014 wiretap order, even without the challenged information.

**III.    JUDGE SIMANDLE CORRECTLY CONCLUDED THAT THE USE OF A CELL-SITE SIMULATOR TO GATHER EVIDENCE UNDER THE OCTOBER 14, 2014 CDW DID NOT UNDERCUT JUDGE DELURY'S PROBABLE CAUSE DETERMINATION, WHERE THE AFFIDAVIT CLEARLY DESCRIBED THE TECHNOLOGY TO BE USED.**

*Standard of Review:* Same as for Point I.

Tutis also claims that Detective Dorn's affidavit in support of Judge DeLury's October 14, 2014 CDW was defective because it did not identify the use of a cell-site simulator ("CSS") as such, calling it "equipment" instead. Tutis claims that this terminology did not clearly notify Judge DeLury that the CSS would "permeate" the walls of Tutis' home and business and resulted in a lack of probable cause. DB36-37.

Investigators use a CSS device to discover, through a deductive process, a target's unknown mobile telephone number(s). The CSS simulates a mobile telephone cell-site tower, which causes mobile telephones in the nearby area to send their electronic signals to the CSS. The CSS captures those signals, including those identifying the electronic serial number ("ESN") and international mobile subscriber identification ("IMSI") that are unique to each telephone. Investigators deploy a CSS near several locations where the target is known to be at a particular time. By gathering signals from the many cell phones in that area and then gathering samples from other locations where the suspect is present, investigators can narrow down the list of identified mobile

telephones to those that appear to follow the suspect from one location to another. By this process of elimination, investigators can then identify the suspect's mobile telephone(s). *See generally United States v. Sanchez-Jara*, 889 F.3d 418, 420 (7th Cir. 2018).

Even though the affidavit did not use the words "cell-site simulator," it explained the technology, the purpose of the device, how it would be used, and what information it would retrieve. That description perfectly describes a CSS. Specifically, the affidavit stated:

> • The device would only retrieve the ESN, Mobile Telephone Number ("MTN"), and IMSI from phones near Tutis, Appx288;
>
> • The device would not obtain any written or oral communication, Appx293;
>
> • The equipment would be used in close proximity to Tutis at different geographic locations, Appx288;
>
> • Tutis' cell phones could then be identified by a process of elimination because the ESN, MTN, and IMSI are unique, Appx288; and
>
> • ACPO detectives would then confirm Tutis' use of each cell phone by analysis of the call detail records and subscriber information, Appx288.

Plainly, such a thorough description of the workings of the CSS provided far more information to Judge DeLury regarding the kind and degree of intrusion into Fourth Amendment protected interests than merely identifying the device by its name. Importantly, the device would not itself identify Tutis' mobile telephone or obtain any oral or written communications. It would

instead canvass all mobile telephones within close proximity to Tutis at different locations where he was known to be. Of course, some locations where Tutis might be would include his home and business. The intrusion of the equipment simulating a cell-site tower to cause all mobile telephones in the area to emit signals was both reasonable and *de minimis*. As Judge Simandle noted, if someone did not want that particular intrusion into his or her home, that person could turn off his or her cell phone. Appx 64.

Judge Simandle found that Detective Dorn was not required to use the words "cell-site simulator" in the affidavit because the warrant "sufficiently described the device's capabilities, what it would do in terms of receiving electronic signals from cell phones in all directions, and what it would <u>not</u> do in terms of not interception communications on such cell phones." Appx60 (emphasis in original).

There is a dearth of case law regarding the use of a CSS. In *United States v. Rigmaiden*, 2013 WL 1932800 (D. AZ. May 8, 2013) (not published), the defendant argued that the search exceeded the scope of the warrant because the warrant did not specifically authorize the FBI to use a CSS. *Rigmaiden*, at \*16. The district court disagreed, stating: "[t]here is no legal requirement that a search warrant specify the precise manner in which the search is to be executed." *Id.* (citing *Dalia*, 441 U.S. at 257); *see also United States v. Brooks*, 427

F.3d 1246, 1251 (10th Cir. 2005) (while a search warrant must describe with particularity the objects of the search, "the methodology used to find those objects need not be described: this court has never required warrants to contain a particularized computer search strategy"); *Compare, Sanchez-Jara*, 889 F.3d at 419 (a warrant's description of "electronic investigative techniques" was a description of a CSS, although not in those words).

The description of the equipment in the affidavit similarly did not run afoul of the particularity requirement of the Fourth Amendment. The Fourth Amendment requires that two matters in the search warrant be particularly described: the place to be searched and the persons or things to be seized. *Grubbs*, 547 U.S. at 97. Here, the places to be searched were clearly those in close proximity to Tutis in different locations at particular times. Further, the things to be seized were the signals containing the identifiers of mobile telephones which were close to Tutis. Nothing more was required, and Tutis does not claim that the CSS fell beyond the scope of the CDW. Appx67. As Judge Simandle correctly held, "[w]here a court has authorized the use of the CSS device for the limited purpose of obtaining electronic identifiers from cell phones within the vicinity of the targeted individual, any intrusion by the CSS's electronic signal into the home is both *de minimis* and reasonable under

the Fourth Amendment." Appx65. The Court properly denied Tutis' motion to

suppress the wiretap evidence on this ground.

## IV.    JUDGE SIMANDLE DID NOT ERR AND PROPERLY EXERCISED HIS DISCRETION BY DENYING BOTH OF TUTIS' MOTIONS TO WITHDRAW HIS GUILTY PLEA.

***Standard of Review*:** Abuse of discretion as to the denial of a motion to withdraw a guilty plea. *United States v. Huff*, 873 F.2d 709, 712 (3d Cir. 1989). *De novo* review as to an ineffective assistance of counsel claim. *United States v. Cross*, 308 F.3d 308, 314 (3d Cir. 2002).

Tutis attempted to withdraw his guilty plea twice. First, he claimed that

his plea was involuntary because he mistakenly believed the guilty plea

agreement was a "packaged deal" with that of his wife, and Judge Simandle

had to conduct a special colloquy to ensure that Tutis' entry into the

"packaged plea agreement" was knowing and voluntary. The District Court

held a hearing on Tutis' motion, at which Tutis' wife, Jasmine Vega, plea

counsel, Michael Farrell, and Vega's attorney, Troy Archie, but not Tutis, all

testified. Afterwards, Judge Simandle denied Tutis' motion to withdraw his

guilty plea, supporting his ruling in a 51-page opinion. Judge Simandle

explained that the recently convicted Farrell's testimony supporting Tutis'

motion was false, and that Tutis made no plausible assertion of innocence and

lacked a substantial reason justifying withdrawal. On appeal, Tutis fails to

demonstrate Judge Simandle's amply supported and carefully reasoned factual

findings regarding Farrell's perjury were clearly erroneous or that his denial of the motion was an abuse of discretion.

Tutis moved to withdraw his guilty plea a second time on the ground that it was caused by Farrell's ineffective assistance. Judge Simandle convened a second evidentiary hearing at which Tutis testified. Judge Simandle denied the second motion, finding that Tutis' testimony, like Farrell's, was not credible. Moreover, Judge Simandle found that Farrell, for all his faults, did not provide ineffective assistance to Tutis, and Tutis was not prejudiced. Tutis can show neither clear error nor an abuse of discretion in those determinations.

### A.    The District Court Did Not Abuse Its Discretion In Denying Tutis' First Motion To Withdraw His Guilty Plea.

#### 1.    Legal Standard

Federal Rule of Criminal Procedure 32(d) permits "withdrawal of the plea upon a showing by the defendant of any fair and just reason." The defendant must meet a "substantial" burden of demonstrating a "fair and just" reason for withdrawal. *United States v. Siddons*, 660 F.3d 699, 703 (3d Cir. 2011). That standard commits to the discretion of the district court whether to permit a defendant to withdraw a guilty plea, so this Court reviews the denial of a motion to withdraw a guilty plea for an abuse of discretion. *United States v. Huff*, 873 F.2d 709, 712 (3d Cir. 1989).

-41-

When determining whether a defendant has shown a "fair and just reason" for withdrawing a plea, a district court must consider 1) whether the defendant asserts his innocence; 2) the strength of the defendant's reasons to withdraw the plea; and (3) whether the Government would be prejudiced by the withdrawal ("the *Siddons* factors"). *Siddons*, 660 F.3d at 703; *Huff*, 873 F.2d at 712. Judge Simandle found the third *Siddons* factor was neutral because the Government's ability to try the case would not be harmed by the withdrawal of the plea. Appx128. But Judge Simandle also found the first two *Siddons* factors weighed strongly against Tutis, with good reason. A "shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." *Siddons*, 660 F.3d at 703 (quotation marks omitted).

## 2.   Judge Simandle Correctly Found That Tutis Proffered No Facts Casting Doubt On His Guilt.

Judge Simandle found that Tutis had not proffered any facts to cast doubt on his guilt, nor did he proffer that some element of guilt was "missing or even debatable." Appx117. A defendant's mere assertion of innocence does not meet the burden of the first *Siddons* factor. Rather, there must be facts in the record which support a claimed defense. *Siddons*, 660 F.3d at 703.

At his plea hearing, Tutis answered detailed factual basis questions establishing his guilt. He admitted he conspired to distribute 140 to 450 kilograms of cocaine and approximately 26 kilograms of heroin during February 2012–December 2014. Appx104, 750. He admitted that he possessed a dangerous weapon in connection with his drug dealing and that he was an organizer, leader, manager or supervisor of the criminal activity. Appx105. He also admitted that he and Vega laundered funds that were the proceeds of drug trafficking and structured cash transactions through various banks to avoid reporting thresholds. Appx105, 752. In moving to withdraw his guilty plea, Tutis did not controvert any of those sworn statements. Appx106, 752.

At the hearing on Tutis' first motion to withdraw his guilty plea, neither Farrell nor Vega questioned Tutis' guilt or the strength of the evidence against him. Appx117; *see, e.g.* Appx913. Judge Simandle found that Tutis' guilty plea hearing admissions were not false, and discredited his contention that he falsely pleaded guilty to the charged crimes out of concern that his wife would face additional charges if he did not. Appx118. Thus, it was not an abuse of discretion for the District Court to find that this *Siddons* factor militated against Tutis' withdrawal of his plea. Appx119.

3.    The District Court Found That Tutis Did Not Proffer A Substantial Reason For Withdrawing From The Plea Agreement.

Tutis claimed his guilty plea was packaged with Vega's, but the Court did not undertake the appropriate Rule 11 colloquy to assure Tutis' voluntariness. A "package" plea deal is one in which the Government accepts a defendant's guilty plea on the condition that a co-defendant also plead guilty. *Hodge*, 412 F.3d at 490. To avoid concerns of coercion among co-defendants pleading guilty to packaged or linked plea agreements, *Hodge* provided guidance to district courts in conducting colloquies to determine whether a defendant's plea was voluntary. *Hodge* required the parties to inform the District Court of the package nature of the plea agreements. *Id.*

a.    The Pleas Were Not Packaged.

The week before trial, the parties engaged in extensive plea negotiations. On October 27, 2016, the Government offered Tutis and Vega packaged plea agreements. Appx774-787, 788-804, 936. As Judge Simandle noted, both plea offers "prominently" mentioned the coupled nature of the pleas in the first paragraph. *See* Appx774, 788. Vega accepted and signed the plea agreement; Tutis did not. Appx.90. As a result, Vega's acceptance became a nullity, and the parties continued to negotiate. Appx90. According to Farrell and Vega,

Tutis rejected the plea offer because he sought to negotiate a more favorable agreement for himself. Appx91.

On Friday, October 28, 2016, with a jury selected and due to report Monday for trial, counsel asked the Court for more time in order to continue negotiations. Tutis and the Government discussed a potential stipulated non-jury trial so that Tutis could preserve his right to appeal the denial of his suppression motions. Appx91. Vega would not have been a party to such a stipulated trial and would have been free to enter her own plea, decoupled from that of Tutis. Appx91. Consistent with Fed. R. Crim. P. 11(c)(1), Judge Simandle did not participate in these negotiations but was aware of them in order to manage the waiting jury.

Archie testified that, by Monday, October 31, the Government agreed to permit Vega to plead guilty independent of her husband. Appx1253-1254. Archie believed that Tutis did not have Vega's best interests at heart, Appx1273, and Vega was thankful for the opportunity to decouple her plea from her husband's, Appx903. That evening, the Government provided counsel for both Vega and Tutis new uncoupled plea agreements. The prominent coupling language in the first paragraph of prior versions of the plea offer, which had been rejected and expired, was absent from the October 31 plea offers. Farrell, however, testified that he did not notice this fundamental

change to the first paragraph of the plea offer. Appx1023. He further testified that, even if he had noticed that the coupling language had been removed, he still "would not have changed [his] view that it was coupled." Appx96.

Plea negotiations between Tutis and the Government continued into November 1 as Tutis sought more concessions to decrease the number of properties he would be required to forfeit and to preserve his right to appeal certain pre-trial suppression motions. All the while, Tutis and Farrell knew that Vega and the Government had reached an agreement in principle and that Vega would plead guilty. The bulk of Vega's plea agreement was settled by October 31 but it was not finalized. Vega owned properties jointly with Tutis which were subject to forfeiture. Consequently, finalization of her plea agreement was put on hold until the final forfeiture language negotiated by Farrell and Tutis could be inserted identically into both Vega's and Tutis' plea agreements. Appx1284-1286, 1303.

The final version of Vega's agreement stipulated to a higher amount of money laundering and higher projected Sentencing Guideline range than in the prior coupled plea offer. Appx887, 892. As Archie explained, the Government had been willing to offer her a lower Guidelines sentence as an inducement for Tutis to enter into the coupled agreement. Appx1278, 1280. But Tutis rejected that agreement. At her own guilty plea hearing, Vega acknowledged the

decoupling of the plea agreements, stating that she understood that she could plead guilty no matter what Tutis did. Appx904.

By late in the afternoon of November 1, Tutis and the Government finally reached an agreement. The only difference in Vega's agreement from the day before was an additional forfeiture carve-out of her laundromat. Vega's plea agreement was not packaged with Tutis', and vice versa. The parties signed and dated the decoupled plea agreements and both defendants pleaded guilty. Appx99. And in so signing, both defendants represented that they had read the entirety of their respective plea agreements and understood the terms.

> b. <u>Because The Pleas Were Not Packaged, No *Hodge* Colloquy Was Necessary, And The Plea Hearing Had All The Indicia Of A Knowing And Voluntary Plea.</u>

At no time did the Government or either defendant notify the Court that the plea agreements were packaged. Nor did the plea memorandum filed with the Court and copied to counsel state that the pleas were packaged. Appx1142. That's because they were not. The only person, other than Tutis, who purportedly believed the pleas were packaged was his attorney, Farrell.

In rejecting Tutis' motion to withdraw his guilty plea, Judge Simandle properly harkened back to the thoroughness of that plea, which fulfilled all of the requirements of Fed. R. Crim. P. 11. Tutis was sworn and understood that if he did not understand any aspect of the plea, he should raise questions and

was free to discuss any matter with his attorney. Appx101, 731. Tutis indicated that he was "pleading guilty of [his] own free will" and that no one "forced [him] to plead guilty or threatened [him] to make [him] plead guilty." Appx103. Tutis confirmed that he had read the plea agreement, went over it carefully with Farrell, and had no difficulty understanding it. Appx103, 733. Tutis confirmed that he had initialed pen-and-ink changes to the plea agreement, that it was the complete plea agreement, and that no one had promised him anything that was different from the written agreement. Appx104; Appx705, 710-714, 735-736.

As Judge Simandle found, Tutis' plea colloquy "could scarcely have been more exacting." Appx102. Judge Simandle assessed Tutis as an "intelligent, articulate, and self-directed" businessman who had run several companies. He was "very involved" in his own defense, "discussing case law and seeming familiar with the legal concepts." According to Judge Simandle, "Tutis made up his own mind about decisions with Farrell in plea negotiations." Appx102; *see* Appx1052. Moreover, Tutis rejected earlier plea offers that were coupled with Vega's and that were more favorable to Vega, in an effort to negotiate another plea agreement more favorable to him. Appx111; *see also* Appx1059. According to Judge Simandle, it was Tutis' "hard

bargaining" in his own interests that led to the decoupled plea agreements for him and Vega, which increased Vega's sentencing exposure. Appx111.

At the plea withdrawal hearing, Tutis relied primarily on the testimony of Farrell, by then a convicted felon. Farrell testified that he believed Tutis' plea was packaged with Vega's and that he was surprised the District Court did not conduct the *Hodge* colloquy. Farrell claimed he purposefully chose not to ask Judge Simandle to give a *Hodge* colloquy out of "loyalty to [his] client" in an effort to inject error into the plea hearing that would serve as a basis for setting Tutis' guilty plea aside. Appx108-9, 986, 1134. Of course, as Judge Simandle noted, had the plea agreements actually been packaged, Farrell would have had a duty to bring it to the Court's attention to ensure that the *Hodge* colloquy occurred, just as the Government did. *Hodge*, 412 F.3d at 491.

At Tutis' November 1, 2016 guilty plea hearing, Farrell assured Judge Simandle that all the proper questions had been asked and answered. Appx110. Farrell also confirmed that the signed plea agreement represented the parties' entire agreement, that he believed Tutis' decision to plead guilty was knowing and voluntary, that he knew of no reason that the Court should not accept Tutis' plea of guilty, and that he believed it was in Tutis' best interest to enter this plea. Appx101, 722, 727-728.

At the motion to withdraw hearing, Farrell reversed course and testified that all of those assurances were lies. Appx1134-1135, 1226. Farrell also claimed he told Tutis after he pleaded guilty that the missing *Hodge* colloquy could affect the voluntariness of his plea. Appx988, 1173. Judge Simandle found that testimony not only incredible, but a "corrupt attempt to help Tutis' cause seeking to set aside a valid guilty plea by pretending that he and Tutis understood the pleas to be coupled." Appx110. *See also* Appx111-12 (Farrell's plea withdrawal hearing testimony was "a clumsy and unethical attempt by ex-counsel to fall on his sword, albeit a fabricated sword, for the benefit of setting aside a conviction"). As Judge Simandle noted, by the time Farrell testified at the hearing on Tutis' motion to withdraw his guilty plea, he had been convicted of felony offenses involving dishonesty, witness tampering, and obstruction of justice and suspended from the practice of law, on his way to disbarment. Appx161; *see also* Appx1159.[3] Hence, lying for his client would not jeopardize his law license. Appx111. Moreover, Farrell appeared "uneasy," as if he were "trying to keep his story straight." Appx111.

---

[3] Farrell's credibility was also impeached by a 2015 federal civil contempt order for providing discovery to his client in violation of a protective order, Appx1158-1159.

Archie and Vega further undercut Farrell's testimony. Farrell and Archie had been involved in the plea negotiations together, yet Archie knew that the pleas were uncoupled and did not expect a *Hodge* colloquy. Appx1387. Vega also testified that she understood that the pleas were not packaged. Appx111. Judge Simandle found as a fact that when Tutis pleaded guilty, he knew the plea agreements were not coupled. Tutis offers no basis to call into question that finding. *See Dardovich*, 190 F.3d at 140.

      c.    <u>Judge Simandle Properly Found As A Fact That, Regardless Of Tutis' Belief About The Packaging Of The Plea Agreement, His Guilty Plea Was Knowing And Voluntary.</u>

Even assuming that Tutis did not understand that his plea agreement was not coupled with Vega's, he cannot show that he would not have entered a plea of guilty had he known, or that he would have manifested a degree of involuntariness or coercion that would impair his plea. Appx112. Tutis substantially benefitted from pleading guilty in several ways, including by avoiding an enhanced penalty information pursuant to 21 U.S.C. § 851 that would have doubled the mandatory minimum sentence from ten to twenty years had Tutis proceeded to trial. Further, by pleading guilty, Tutis received a 330-month cap on the sentence for which the Government could advocate and a two-point reduction in his offense level for acceptance of responsibility. Appx710. In addition, Tutis preserved his appellate rights to challenge the pre-

trial suppression ruling. Given the overwhelming evidence of Tutis' guilt available to the Government had the case gone to trial, suppression was his only chance of avoiding a long prison sentence. And he forfeited fewer properties than the Government had charged and seized. Appx112, 115.

Judge Simandle found that Tutis offered no evidence for the proposition that if the Court had asked him the *Hodge* colloquy questions, he would have declined to plead guilty. Appx121. There was no evidence whatsoever that force, apprehension or fear for his wife's prosecution motivated Tutis to enter his plea. Appx113. To the contrary, through his tactics, Tutis caused his wife to receive a worse deal than the one the Government had previously offered her. Nor was there any evidence that Tutis "was not well-informed intelligent, and more than capable of making his own decisions whether or not to plead guilty." Appx115.

Contrary to Tutis' assertion, DB44, Tutis and Vega's telephone conversation the night before they pleaded guilty demonstrates "only passing reference to Tutis' thought of pleading to benefit Vega." Appx124, 998-1009. That conversation emphasized Tutis' primary interest in saving his properties from forfeiture, preserving his appellate rights, and avoiding the enhanced penalty. Appx125. In fact, Judge Simandle interpreted the call to demonstrate

that Vega conveyed to Tutis that he should attempt to negotiate the best deal for himself because she was negotiating a separate plea for herself. Appx126.

As Judge Simandle observed, "[e]veryone has acknowledged the strength of the evidence Tutis would have confronted at trial…. There is no indication in the record that Farrell or Tutis thought they could achieve an acquittal at trial." Appx127-128. Consequently, even if Tutis had been unaware the pleas were unpackaged, he would not have rejected the final negotiated plea deal and gone to trial. Thus, there was no substantial reason to justify the withdrawal of his guilty plea.

    4. <u>Conclusion</u>

Judge Simandle's care in considering the record and his detailed 51-page opinion demonstrate that the Court did not abuse its discretion in determining that Tutis had not shown "a fair and just reason for requesting the withdrawal" of his guilty plea. Fed. R. Crim. P. 11(d)(2)(B).

**B. <u>Tutis' Second Motion To Withdraw His Guilty Plea</u>**

Seeking a second bite of the apple, Tutis filed another motion to withdraw his guilty plea, claiming that Farrell had been ineffective because he purportedly did not read the final version of the plea agreement and did not notify Tutis it was not coupled with Vega's. After hearing Tutis testify in support of his second motion and considering the three days of testimony

already taken in support of Tutis' first motion, Appx1501, Judge Simandle
again declined to allow Tutis to withdraw his guilty plea. Judge Simandle
properly found that Farrell's representation did not fall below an objective level
of reasonableness and that Tutis could not show any prejudice.

### 1.   Legal Standard

Where a defendant is represented by counsel during the plea process and
enters his plea upon the advice of counsel, the voluntariness of the plea
depends on whether counsel's advice "was within the range of competence
demanded of attorneys in criminal cases." *McMann v. Richardson,* 397 U.S. 759,
771 (1970); *see also Tollett v. Henderson,* 411 U.S. 258, 267 (1973). "When a
convicted defendant complains of the ineffectiveness of counsel's assistance,
the defendant must show that counsel's representation fell below an objective
standard of reasonableness." *Strickland v. Washington,* 466 U.S. 668, 687–688
(1984). In addition, the defendant must show "prejudice," *i.e.*, that former
counsel's alleged deficiencies "affected the outcome" of the proceedings. *Hill v.
Lockhart*, 474 U.S. 52, 58-59 (1985). Thus, Tutis needed to show a reasonable
probability that, but for Farrell's errors, he would not have pleaded guilty and
would have insisted on going to trial. *Id.* at 59.

This Court reviews a district court's decision on ineffective assistance of
counsel *de novo* because both the performance and prejudice prongs of the

claim present mixed questions of law and fact. *See United States v. Cross*, 308

F.3d 308, 314 (3d. Cir. 2002). However, because this Court is ultimately

reviewing the voluntariness of Tutis' plea, this Court should, as above in

section VI.A, determine whether the District Court abused its discretion in

considering the *Siddons* factors. *See United States v. Brown,* 250 F.3d 811, 815

(3d Cir. 2001).

### 2.    Farrell's Representation Was Not Ineffective.

Tutis claims that Farrell was ineffective because he allegedly failed to

ensure that Tutis understood the plea agreement and that the document

accurately and completely reflected the agreement. DB49; Appx1534-1535.

Unfortunately for Tutis, Judge Simandle found both his and Farrell's

testimony on this point not believable.

Judge Simandle decided that Farrell's plea withdrawal hearing testimony

that he was ineffective was balderdash. Appx143. In the same vein, Judge

Simandle did not credit Tutis' ineffectiveness hearing testimony that he lied

during his plea hearing and that Farrell told him to lie. Appx143; *see also*

Appx1416, 1420. Judge Simandle found that Tutis' testimony contained "a

litany of lies," wherein he claimed he never read or understood the plea

agreement. Appx138-139; *see also* Appx1416, 1474. In addition, according to

Judge Simandle, Tutis' "testimony that he would have opted for trial rather

than entering the favorable plea that he bargained for is not logical or credible." Appx145-146. Again, Tutis does not purport to show that Judge Simandle's credibility findings were clearly erroneous. Nor can Tutis show that Judge Simandle erred by finding that Farrell's representation—which resulted in Tutis avoiding a Kamikaze trial and obtaining a very favorable plea agreement notwithstanding his poor bargaining position—was not "within the range of competence demanded by attorneys in criminal cases." *McMann,* 397 U.S. at 771; Appx144.

### 3.    Tutis Cannot Show Prejudice.

On the second *Strickland/Hill* prong, Judge Simandle properly concluded that Tutis failed to show that he would not have entered his plea of guilty if he had known the plea was unpackaged. Appx145. Tutis rejected earlier versions of the plea agreement, which were coupled, in order to continue to negotiate aggressively to claw back forfeited properties and preserve his appellate rights. Appx145. He has offered no trial strategy to explain how he would defend himself against the charges were he to go to trial. *Id.* Thus, Tutis failed to establish the second *Strickland* element.

* * * * *

Judge Simandle correctly found that Tutis' motions to withdraw his guilty plea were built on sand castles of lies, his own and Farrell's. The

evidence at the plea withdrawal hearing revealed those lies for what they were, and fully justified Judge Simandle's rulings.

## CONCLUSION

For all these reasons, Defendant's convictions should be affirmed.

Respectfully submitted,

CRAIG CARPENITO
UNITED STATES ATTORNEY

By:    Sabrina G. Comizzoli
Assistant U.S. Attorney
Appeals Division
970 Broad Street, Suite 700
Newark, New Jersey 07102
(973) 645-2878

Date:  August 24, 2020

## CERTIFICATE OF COMPLIANCE

I certify as an Assistant United States Attorney for the District of New Jersey that:

1.    this brief contains 12,369 words, thereby complying with the length limitations of Fed. R. App. P. 32(a)(7);

2.    this brief complies with the typeface requirements and type style requirements of Fed. R. App. P. 32(a)(5) and (6) by using Microsoft Word 2016's 14-point proportionally-spaced Calisto MT typeface;

3.    the PDF of the brief was prepared on a computer automatically protected by a continuously-updated version of McAfee Endpoint Security 10.7 and no virus was detected.


*Sabrina G. Comizzoli*
Sabrina G. Comizzoli
Assistant U.S. Attorney
Appeals Division

Dated: August 24, 2020

## CERTIFICATION OF FILING AND SERVICE

I hereby certify that on August 24, 2020, I caused the Brief for Appellee to be filed with the Clerk of this Court by (a) electronic filing in the PDF form using the Circuit's electronic filing system, and (b) causing the Brief for Appellee to be served:

[X] by the Notice of Docketing Activity generated by the Third Circuit's electronic filing system, on the following Filing User:

Stanely O. King, Esq.
Stan@Kingslaw.com

Consistent with this Court's March 17, 2020 notice, I am deferring the filing of paper copies of the Brief until this Court provides further direction.

_____
Sabrina G. Comizzoli
Assistant U.S. Attorney

Dated: August 24, 2020